ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| TERESA SOTO AMADEO<br><br>Parte Apelante<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE AGUADILLA, HONORABLE JULIO ROLDÁN CONCEPCIÓN, en su capacidad como alcalde del municipio autónomo de Aguadilla, CARMEN FELICIANO CORTÉS; JANE DOE; CORPORACIÓN ABC; CORPORACIÓN DEF; ASEGURADORA ABD; ASEGURADORA DEF.<br><br>Parte Apelada | KLAN202300743 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: AG2022CV01786<br><br>Sobre: Mandamus; Notificación Defectuosa, Sentencia Declaratoria; Destitución Ilegal |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de enero de 2024.

Comparece ante este Tribunal de Apelaciones la Sra. Teresa Soto Amadeo (señora Soto Amadeo), mediante recurso de *Apelación Civil*, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 14 de febrero de 2023, notificada el mismo día. Mediante el referido dictamen, el TPI desestimó el recurso extraordinario de *Mandamus*, la solicitud de sentencia declaratoria y las restantes causas de acción asociadas a los hechos contenidos en la demanda.

El 1 de marzo de 2023, la señora Soto Amadeo presentó una *Moción de Reconsideración* y el 20 de julio de 2023, mediante *Resolución*, el TPI declaró No Ha Lugar el petitorio.

Evaluados los autos del caso a la luz del derecho aplicable, confirmamos la *Sentencia* apelada.

**I.**

Allá para el 7 de julio de 1997, la señora Soto Amadeo fue contratada por el Municipio de Aguadilla (Municipio) para un nombramiento provisional II, hasta el 15 de agosto de 1997. Luego de esta fecha, la señora Soto Amadeo fue nombrada como Ayudante Especial para dirigir la Oficina de Compras del Municipio hasta el 21 de julio de 2000. Por su buen desempeño, el 19 de octubre de 2015, el Municipio nombró a la señora Soto Amadeo como directora del Programa Head Start y Early Head Start (el Programa) en Aguadilla.

El 16 de febrero de 2022, notificada el 22 de febrero de 2022, el Municipio le notificó a la señora Soto Amadeo una carta de destitución, firmada por el Sr. Julio Roldán Concepción (señor Roldan Concepción), Alcalde del Municipio, y la Sra. Carmen Feliciano Cortés (señora Feliciano Cortés), Presidenta de la Junta de Gobierno de Puerto Rico, en la cual le informaron que su contrato de empleo no sería renovado.[1] La carta disponía lo siguiente:

> Hacemos referencia a Contrato de Empleo, Núm. 2021-322, en el cual se compromete a prestar a el Municipio de Aguadilla sus servicios en calidad de Directora del Proyecto Head Start y Early Head Start. Este contrato entró en vigor el 1 de marzo de 2021 y tendrá vigencia hasta el 28 de febrero de 2022.
>
> Le informamos que el mismo no será renovado, por lo que su contrato con el municipio vence el 28 de febrero de 2022, según establecido en la cláusula decimonovena. Esta decisión se hace conforme a recomendación de la Junta de Gobierno, basada en comunicación de ACUDEN, donde establece que la agencia delegada de nuestro municipio fue clasificada como una de alto riesgo.
>
> En adición a lo antes indicado, hemos recibido una comunicación de la oficina del Contralor en el informe de auditoría M-22XT que cubre el periodo auditado del 1 de julio de 2016 al 31 de diciembre de 2019. Usted conoce el contenido del informe ya que le fue notificado

---

[1] Véase, Apéndice de la *Apelación Civil,* pág. 4.

y en el mismo se hace una serie de señalamientos de carácter extremadamente serios en relación a la administración de Head Start y Early Head Start.

Por los hechos anteriores, el 30 de noviembre de 2022, la señora Soto Amadeo presentó una *Demanda* y como parte de sus alegaciones, expuso que la referida comunicación por parte del Municipio no le notificó su derecho de solicitar revisión judicial al amparo de la reglamentación aprobada por el Municipio.[2] Además, alegó que la comunicación violó la reglamentación aplicable relacionado a la destitución del puesto de directora del Programa, ya que el proceso utilizado no incluyó los procesos indispensables para el proceso de destitución. Señaló que la Administración para el Cuidado y Desarrollo Integral de la Niñez (ACUDEN), reconoció su labor sobresaliente como directora y que estos, como Administración del Departamento de la Familia, eran responsables de administrar los fondos Federales del Programa, de los cuales el Municipio de Aguadilla es parte. Finalmente, alegó que el puesto de directora del Programa estaba regulado por el Reglamento de la Junta de Gobierno del Programa Head Start y Early Head Start, firmado por el señor Roldán Concepción, por lo que se debía seguir con unas determinadas obligaciones y un debido proceso de ley en caso de destitución de dicha posición.

El 30 de noviembre de 2022, la señora Soto Amadeo presentó una *Petición de Mandamus y Sentencia Declaratoria,* en la cual exigió al foro primario el proceso correcto de una destitución, cónsono con la reglamentación del Programa de Head Start y Early Head Start.[3] Según el reglamento antes citado, el procedimiento a seguir en caso de una destitución es el siguiente:

a. Deberá convocarse a la Junta de Gobierno del programa, quienes someterán un informe escrito que sustente la falta disciplinaria según el reglamento interno sobre jornada de trabajo.

---

[2] Véase, Apéndice de la *Apelación Civil*, págs. 7-15.
[3] Véase, Apéndice de la *Apelación Civil,* págs. 56-69.

b. Dicho informe deberá ser presentado a la autoridad nominadora.

c. Se le notificará por escrito al director sobre la formulación de los cargos administrativos.

d. Se le notificará al director de su derecho a una audiencia disciplinaria para explicar su versión de los hechos, la cual podrá solicitar dentro del término de 5 días laborables contados a partir de la fecha del recibo de la comunicación.

e. Dicha vista evidenciaria se celebrará ante el pleno de la Junta de Gobierno.

f. La Junta de Gobierno citará por escrito al director con no menos de 5 días laborables de anticipación.

g. Derecho de ofrecer su versión de los hechos, así como presentar todo testigo y documento que entienda necesario para sustentar su posición.

h. Celebrada la audiencia disciplinaria, la Junta de Gobierno remitirá un informe con sus hallazgos y recomendaciones.

i. En el caso de que la acción final conlleve la destitución del director, previo a notificarle al director su determinación, la Junta de Gobierno deberá notificar por escrito al Comité de Política Normativa de su intención de destituir al director. Dicha notificación deberá estar acompañada con copia del informe rendido por la Junta de Gobierno.

j. [...]

k. [...]

l. En el caso del Comité de Política Normativa avalar la destitución del director, la Junta de Gobierno procederá a notificar al director su decisión final y apercibirle de su derecho de apelar ante el Tribunal de Primera Instancia, Sala de Aguadilla, dentro del término de 20 días a partir de la notificación conforme al artículo 1.050 del Código Municipal.

[...]

Además, alegó que quien ostenta la jurisdicción para realizar una destitución de la plaza de director es la Junta de Gobierno del Programa, y no el alcalde de la dependencia municipal. Finalmente, arguyó que el proceso utilizado en su contra violó los preceptos más básicos del debido proceso de ley. Por lo anterior, la señora Soto Amadeo solicitó al TPI una sentencia declaratoria para que se determinara los derechos de la apelante de solicitar una nueva carta de destitución con su derecho de apelación y una orden al Municipio para que cumpliesen con su obligación ministerial de notificar una carta de destitución según la Ordenanza Municipal Número 23, serie 2021-2022.

El 12 de diciembre de 2022, el Municipio presentó una *Moción de Desestimación de Recurso Extraordinario de Mandamus* en la cual negaron que la señora Soto Amadeo no hubiese sido notificada de la determinación del Municipio de la terminación del contrato de servicios.[4] En lo especifico, alegaron que la señora Soto Amadeo fue notificada de la determinación de no renovar su contrato el 16 de febrero de 2022, la cual fue recomendada por la Junta de Gobierno, basada en una comunicación de ACUDEN donde se establecía que la delegada del municipio fue clasificada como una de alto riesgo. Señaló que la Ordenanza Municipal Número 23 aplicaba a casos de destitución del empleado y no a casos de terminación de relación contractual como el de autos.

En respuesta, el 23 de diciembre de 2022, la señora Soto Amadeo presentó su oposición en la cual reiteró las alegaciones contenidas en la *Demanda*.[5]

El 14 de febrero de 2023, el TPI emitió una *Sentencia*, mediante la cual declaró No Ha Lugar la *Demanda* y desestimó el recurso extraordinario del *Mandamus*, la solicitud de sentencia declaratoria y las restantes causas de acción asociadas a los hechos contenidos en la demanda. En lo pertinente, dispuso lo siguiente:

> En el caso de autos no surge que la parte demandante no fuese notificada de su despido o que fuese necesario notificar el despido conforme la ordenanza 23, serie 2021-2022. Por el contrario, de los autos surge que la relación laboral existente entre la demandante y el Municipio de Aguadilla estuvo regida por un contrato de servicios profesionales suscrito entre ambos. El referido contrato tenía una fecha de inicio y una de terminación que las partes estaban obligadas a cumplir, excepto en aquellas instancias dispuestas en el acuerdo contractual. Por tanto, una vez expirado el término que disponía el contrato, el Municipio tenía la potestad de no renovarlo. Ante ello, somos del criterio que no procede el recurso de mandamus solicitado.

---

[4] Véase, Apéndice de la *Apelación Civil*, págs. 36-44.
[5] Véase, Apéndice de la *Apelación Civil*, págs. 45-50.

El 1 de marzo de 2023, la señora Soto Amadeo presentó una *Moción de Reconsideración*, solicitando al foro primario que celebrara una vista evidenciaria para recibir prueba de las funciones que ejercía ésta en su posición como directora, de las garantías legales establecidas en los procesos de destitución y las alegadas violaciones al procedimiento establecido en ley para la destitución.[6]

El 27 de marzo de 2023, el Municipio presentó una *Oposición a Moción de Reconsideración* en la cual solicitó al TPI que declarara No Ha Lugar la moción en reconsideración presentada por la señora Soto Amadeo, pues consistía en alegaciones erradas de la *Demanda* sin proveer autoridades jurídicas que sostuvieran su teoría de que un despido es igual a una no renovación de un contrato de servicio.[7]

El 20 de julio de 2023, el TPI mediante *Resolución*, declaró No Ha Lugar la *Moción de Reconsideración* presentada por la señora Soto Amadeo.[8]

Aun inconforme con la determinación del TPI, el 21 de agosto de 2023, la señora Soto Amadeo presentó el recurso de *Apelación Civil* de epígrafe. En su comparecencia, la señora Soto Amadeo solicitó a este Honorable Tribunal que determinara los derechos que según su interpretación le correspondían sobre solicitar una nueva carta de destitución en la cual se incluya su derecho de apelar, según la Ordenanza Municipal Número 23. Además, que determináramos si la señora Soto Amadeo tenía derecho a pasar por el proceso administrativo adjudicativo según su puesto de empleo, cónsono con lo establecido en la Ordenanza Municipal Número 23. Además, le imputó al TPI la comisión del siguiente error:

> Erró el TPI al desestimar la *Demanda* debido a que la apelante tenía derecho a ser notificada de una carta de destitución que incluyera los términos de revisión judicial establecidos en Ordenanza Municipal Número 23, Serie 2021-2022, titulada "Para adoptar el nuevo

---

[6] Véase, Apéndice de la *Apelación Civil*, págs. 23-29.
[7] Véase, Apéndice de la *Apelación Civil*, págs. 19-22.
[8] Véase, Apéndice de la *Apelación Civil*, págs. 1-2.

Reglamento de la Junta de Gobierno del Programa Head Start y Early Head Start del Municipio Autónomo de Aguadilla para derogar la Ordenanza Número 68 serie 2010 Guión 2011, para derogar la Ordenanza Número 82 serie 2009 Guión 2010 y para otros fines.

El 19 de septiembre de 2023, el Municipio presentó *Oposición a Recurso de Apelación.*

## II.

## A.

La Regla 10.2 de Procedimiento Civil[9], establece que en la alegación responsiva cualquier defensa de hecho o de derecho que se tenga en contra de una reclamación. Sin embargo, la parte contra quien se ha instado la demanda podrá optar por presentar una moción de desestimación en la que alegue cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable.[10]

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[11] La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[12]

---

[9] 32 LPRA Ap. V, R. 10.2.
[10] *Íd.*
[11] *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).
[12] *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994).

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.[13] Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada.[14]

**B.**

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda*. Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público.[15] De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[16]

Como se sabe, las partes contratantes quedan obligadas a las condiciones y los términos pactados cuando concurren los elementos de consentimiento, objeto y causa.[17] Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio".[18]

En materia contractual, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[19] De lo contrario, las cláusulas del contrato deben leerse de forma integrada e interpretarse las unas por las otras, resolviendo cualquier

---

[13] *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505.
[14] *Colón v. Lotería*, 167 DPR 625, 649 (2006).
[15] Art. 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753; *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018).
[16] Art. 1237 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9771.
[17] *Engineering Service v. AEE*, 209 DPR 1012, 1027 (2022); Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754.
[18] Art. 269 del Código Civil de 2020, 31 LPRA sec. 6131. Véase, además: *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 189 (2016).
[19] Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342; *Marcial v. Tomé*, 144 DPR 522, 536 (1997).

ambigüedad de modo que todas sus partes surtan efecto.[20] Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación."[21]

## C.

En lo concerniente a la contratación gubernamental, "el Estado está obligado, por imperativo constitucional, a manejar los fondos públicos con los principios fiduciarios y éticos más altos".[22] En específico, la Sección 9 del Artículo VI de la Constitución de Puerto Rico establece que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley".[23]

Por tanto, en nuestro ordenamiento los contratos con entidades gubernamentales están revestidos del interés público más alto.[24] Por esta razón, existen ciertos estatutos especiales que regulan la contratación gubernamental.[25] Al respecto, el Tribunal Supremo ha expresado que "[l]a validez de los contratos con los municipios tiene que determinarse según las disposiciones pertinentes de la Ley de Municipios Autónomos, y no según la teoría de las obligaciones y contratos del Código Civil, que tan solo aplica supletoriamente".[26] Por ello, es crucial que los municipios actúen "acorde con los procedimientos establecidos por ley y nuestra

---

[20] Art. 1236 del Código Civil de 2020, 31 LPRA sec. 9757.
[21] *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009).
[22] *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 456 (2014); *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 739 (2013); *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 452 (2007).
[23] Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1.
[24] *Alco Corp. v. Mun. de Toa Alta*, 183 DPR 530, 530–533 (2011); *Fernández & Gutiérrez v. Mun. San Juan*, 147 DPR 824, 829 (1999).
[25] *Landfill Technologies v. Mun. de Lares,* 187 DPR 794, 801 (2013); *Johnson & Johnson v. Mun. de San Juan*, 172 DPR 840, 854–855 (2008), *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 245–252 (2007).
[26] *Landfill Technologies v. Mun. de Lares,* supra, pág. 800.

jurisprudencia interpretativa al momento de desembolsar fondos públicos para el pago de las obligaciones contraídas".[27]

De hecho, el Tribunal Supremo ha reiterado que las partes que contratan con cualquier entidad gubernamental sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad por sus pérdidas. Cónsono con ello, ha rechazado la aplicación de cualquier remedio en equidad, como el enriquecimiento injusto, para convalidar la obligación pública sin contrato escrito y así indemnizar los daños sufridos por una parte privada al no cumplir con estos requisitos.[28]

Siendo así, conforme a las disposiciones del Código Civil citadas, un contrato entre una parte privada y un municipio que no cumpla con las leyes fiscales que imponen controles fiscales será nulo e inexistente.[29]

**III.**

En el presente caso, la señora Soto Amadeo alega, en síntesis, que el Municipio de Aguadilla la destituyó de su puesto como Directora del Programa de Head Start y Early Head Start en dicho municipio, sin seguir los procedimientos adecuados, violentando así su debido proceso de ley. Además, arguye que en la notificación de la comunicación de destitución, ésta no fue informada de su derecho a solicitar revisión judicial al amparo de la reglamentación aprobada por el Municipio de Aguadilla.

Por su parte, el Municipio acepta que en efecto, la señora Soto Amadeo fue nombrada como Directora del Programa Head Start y Early Head Start del Municipio de Aguadilla y que se le notificó mediante una carta que no renovarían su contrato de servicios mediante el cual ésta rendía sus labores como Directora del

---

[27] *ALCO Corp. v. Mun. de Toa Alta,* supra, pág. 537.
[28] *Íd.,* pág. 552.
[29] Artículo 1207 del Código Civil de 1930, 31 LPRA ant. sec. 3372; *Rodríguez Ramos et al. v. ELA et al.,* supra, págs. 456-457.

Programa. Sin embargo, alega que la carta enviada a la señora Soto Amadeo cumple con la responsabilidad de notificar a un servidor público sobre la decisión de terminación de su relación laboral con un ayuntamiento municipal y que no podía notificarle que había sido destituida de su puesto cuando, de los mismos términos del contrato suscrito entre ellos, se desprendía que la relación contractual había concluido y que la misma no se habría de renovar.

Según antes discutido, la Regla 10.2 de Procedimiento Civil, supra, provee para que un tribunal, a solicitud de parte, mediante la presentación de una moción de desestimacion, desestime una demanda cuando se alegue algunas de las defensas antes mencionadas.

Por otro lado, el recurso extraordinario del *Mandamus* procede tomando en consideración lo siguiente: (1) que el *Mandamus* es el recurso apropiado cuando el peticionario no dispone de otro remedio legal adecuado para hacer valer su derecho y cuando se trate del incumplimiento de un deber ministerial que se alega ha sido impuesto por ley; (2) la solicitud de *Mandamus* tiene que ir dirigida contra el funcionario principal encargado del cumplimiento del deber, se levantan cuestiones de interés y el problema planteado requiere una solución pronta y definitiva; (3) el peticionario establece que hizo un requerimiento previo al funcionario para que este realizase el acto cuyo cumplimiento se solicita; y (4) el peticionario tiene un interés indiscutible en el derecho que se reclama, distinto al que pueda tener cualquier otro ciudadano.[30]

Surge del expediente, que la señora Soto Amadeo fue contratada por el Municipio de Aguadilla, mediante un *Contrato de Empleo*, el 26 de febrero de 2021, para el Proyecto Head Start y Early

---

[30] Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423; *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 985 (2020); *Báez Galib y Otros v. Comisión Estatal de Elecciones*, 152 DPR 382, 395 (2000).

Head Start.[31] En el referido contrato, la cláusula pertinente a la controversia ante nos dispone lo siguiente:

> DECIMOSÉPTIMA: Este CONTRATO entrará en vigor el 1ro de marzo de 2021 y tendrá vigencia hasta el 28 de febrero de 2022. **"LA SEGUNDA PARTE" reconoce que a la fecha de vencimiento del presente contrato no existe garantía de continuidad ya que depende de que el concesionario asigne los fondos correspondientes al proyecto y de que persista la necesidad del servicio contratado.**

(Énfasis nuestro).

La anterior cláusula dispone el tiempo de vigencia del contrato suscrito entre el Municipio y la señora Soto Amadeo, y además, dispone que el referido contrato no contaba con una garantía de continuidad, ya que estaba sujeto a unas condiciones que le correspondía al Municipio dilucidar.

Luego de analizar las alegaciones de la demanda, así como la comparecencia de ambas partes, y tal como lo determinó el TPI, colegimos en que nos encontramos frente a un contrato de servicios, firmado y suscrito por la señora Soto Amadeo con el Municipio de Aguadilla, a través del señor Roldán Concepción, alcalde de dicho municipio. El contrato contiene cláusulas claras, específicas y no dejan duda sobre la intención de los contratantes. En este caso, la intención de las partes consistía en que la señora Soto Amadeo brindara sus servicios en calidad de Directora del Programa Head Start y Early Head Start para el Municipio de Aguadilla para el año fiscal 2021-2022 por un tiempo determinado. En ese término, la señora Soto Amadeo devengaría un sueldo bisemanal y acumularía tanto días de vacaciones como de enfermedad. Además, dicho contrato también establecía que podía ser rescindido por cualquiera de las partes en cualquier momento mediante notificación previa a su efectividad, sujeto a lo establecido con las normas generales para regir la administración del personal.

---

[31] Véase, Apéndice de la *Oposición a Recurso de Apelación*, págs. 1-9.

Finalmente, la cláusula vigesimotercera dispone el procedimiento a seguir en caso de que el contrato se rescindiera o se determinara la no renovación del mismo. En lo particular, dispone la cláusula lo siguiente:

[...]

En la eventualidad que este contrato se rescinda o se determine **que no se va a renovar luego de su vencimiento** "LA SEGUNDA PARTE" de no estar de acuerdo **tendrá derecho acudir al Tribunal de Primera Instancia, Sala Superior de Aguadilla dentro del término jurisdiccional de veinte (20) días a partir de la notificación**, conforme dispone el Artículo 2.007 de la Ley Número 107-2020 según enmendada, conocida como Código Municipal de Puerto Rico, por lo que a estos efectos se dará por notificada.

(Énfasis nuestro).

Si tomamos en consideración los términos y condiciones del contrato, el mismo establece que de la señora Soto Amadeo no estar de acuerdo con la no renovación del contrato, ésta podía acudir al Tribunal de Primera Instancia, Sala de Aguadilla para apelar la determinación del Municipio. En este caso, el Municipio le comunicó el 16 de febrero de 2022, a la señora Soto Amadeo que su contrato no sería renovado. No es hasta el 20 de noviembre de 2022, que la señora Soto Amadeo presentó la *Demanda* en el Tribunal de Primera Instancia, Sala Superior de Aguadilla, para hacer valer sus derechos. Claramente, el término para que la señora Soto Amadeo cuestionara la determinación del Municipio, expiró pues pasaron meses luego de la notificación de la carta de no renovación.

Por todo lo anterior, concluimos que el Municipio, cumpliendo con su derecho de no renovar el contrato gubernamental suscrito por las partes, a finales del mes de febrero 2022, remitió la carta de no renovación a la señora Soto Amadeo, en la cual le informó que el mismo no habría de ser renovado, por recomendación de ACUDEN y de la Junta de Gobierno. Cabe señalar que, contrario a las alegaciones contenidas en la *Demanda* y como antes mencionado,

nos encontramos ante un contrato de servicio suscrito por las partes, y no frente a una destitución del puesto que ostentaba la señora Soto Amadeo. Establecido lo anterior, no era necesario que el Municipio cumpliera con lo establecido en la Ordenanza Municipal 23, serie 2021-2022, pues la carta de no renovación del contrato remitida a la señora Soto Amadeo cumplió con notificarle a ésta sobre la decisión tomada por la Junta de Gobierno y ACUDEN, mas no debía advertir de algún término para apelar la decisión.

## IV.

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones